Peter Cretecos v. Commissioner.
Cretecos v. Commissioner
Docket No. 57063.
United States Tax Court
T.C. Memo 1957-219; 1957 Tax Ct. Memo LEXIS 28; 16 T.C.M. (CCH) 1003; T.C.M. (RIA) 57219; November 29, 1957
*28 Petitioner was in the restaurant business in Waverly, New York, and filed income tax returns for the calendar years 1947 to 1951, inclusive. The Commissioner rejected these returns as not being substantiated by any adequate books and records and computed petitioner's income for the respective years by use of the net-worth-plus-nondeductible-expenditures method and determined deficiencies for each of the taxable years. The Commissioner has used $300 as the amount of cash which petitioner had on hand at the beginning of the period of net worth computation, December 31, 1946. Petitioner claims he had at least $17,000 cash on hand at that date. Held, petitioner has established by credible testimony that he had on hand at least $5,500 in cash on December 31, 1946. That amount should be used as petitioner's amount of cash on hand December 31, 1946, instead of the $300 which the Commissioner used in his net worth computation. Petitioner has not established by credible testimony that he had at lest $17,000 in cash on hand at the beginning period, December 31, 1946. Alan J. Friedlander Esq., 302 Broad Street, Waverly, N. Y., for the petitioner. James E. Markham, Jr., Esq., for the *29 respondent. BLACK Memorandum Findings of Fact and Opinion The Commissioner has determined deficiencies in petitioner's income tax and has made additions to the tax under sections of the Internal Revenue Code of 1939, [1] as follows: Additions to the Tax
Sec.
Sec.
294(d)
Sec. 294
Year
Tax
293(a)
(1)(A)
(d)(2)
1947
$ 391.00
$18.30
None
$21.96
1948
1,357.30
67.87
$135.73
81.44
1949
1,367.19
68.36
136.72
82.03
1950
285.00
14.25
28.50
17.10
1951
376.00
18.80
37.60
22.56
Petitioner, by appropriate assignments of error, contests the correctness of these deficiencies and the additions to the tax. Findings of Fact Petitioner Peter Cretecos resides in Waverly, New York, and in each of the taxable years filed income tax returns with the collector of internal revenue at Syracuse, New York. Petitioner is a Greek immigrant who came to the United States in 1913. He had very little education when he came to the United States and did not go to school after he arrived here. He had three brothers who had preceded him *30 to the United States and had settled in Waverly, New York. Two of these brothers are now dead and one of them, William Cretecos, hereinafter sometimes referred to as William, is still living and lives in Waverly. Peter joined them in Waverly but later went to Elmira, New York, and worked there for several years. Later he returned to Waverly and in 1927 went into the restaurant business there. Petitioner was frugal and saved a good portion of his money which he earned while an employee in Elmira and it was with these savings that he was able to go into the restaurant business at Waverly. Prior to returning to Waverly, he was also employed in Penn Yan, New York, as a candy maker and there earned $140 a month. He saved a substantial portion of these earnings. Petitioner started his restaurant with a $2,000 investment. This $2,000 was money he had saved while he was employed at Elmira and Penn Yan. He did not invest all of his savings in the restaurant and still had a considerable amount of cash on hand after investing $2,000 in the resturant business. Petitioner had his meals from 1927 to 1940 with his brothers and paid no room rent and only small amounts for his food. Petitioner *31 was thrify in his purchase of clothes and dressed in a very economical manner during the years 1928 to and including the taxable years 1947 to 1951, inclusive. Petitioner, in his restaurant, sold hot dogs, hamburgers, and soft drinks. He had a beer license from 1933 to approximately 1940, and sold beer. After that he did not sell beer in his restaurant, but only soft drinks. Petitioner rented a safe deposit box in the Waverly bank in 1941 and had money there, on his person, and in a safe in his restaurant in the year 1945. In 1945, petitioner ordered three $1,000 bills from an Elmira bank. These bills were secured from Washington, D.C., and delivered to petitioner a few days later. When they were delivered to him he paid for them in smaller bills which he had accumulated through his savings in prior years. After petitioner had secured the three $1,000 bills in the manner aforesaid, he kept them in a money belt which he generally wore on his person. At times he kept this belt in his safe. This money belt has been introduced in evidence as an exhibit in this case. In 1945, petitioner had six bags of coins in his safe in the restaurant; he deposited these coins in the Waverly *32 bank on June 9, 1948, and the coins totaled $2,500. The deposit was made by petitioner's brother, William, at petitioner's request. Petitioner deposited the three $1,000 bills hereinbefore mentioned to his account in the Citizens National Bank in Waverly on June 14, 1948. The deposit was made by petitioner's brother, William, at petitioner's request. From 1947 to 1951, the taxable years here involved, petitioner had no business other than his restaurant business in Waverly. After petitioner moved his restaurant from the small building across the street to the larger building, his business considerably improved. Later, after 1949, his business declined substantially. Prior to 1947, petitioner regularly filed income tax returns which were prepared for him by Francis J. Clohessy, Tioga County Judge and Surrogate; after 1947, returns of petitioner were completed by a Mr. Pecally, who was recommended by Judge Clohessy. Petitioner was unable to understand bookkeeping and such records as he did keep were poor and inadequate. He had none of these records available when the internal revenue agent, Edmund J. Vitkus, made his examination in 1952. Vitkus, finding no adequate records from *33 which he could determine petitioner's net income for the years 1947 to 1951, inclusive, used the net-worth-and-expenditures method in arriving at petitioner's adjusted gross income for those years. In his use of this method he arrived at adjusted gross income as follows: Year
Amount
1947
$2,830.19
1948
8,171.51
1949
8,134.61
1950
2,479.25
1951
2,703.63
The Commissioner had adopted Vitkus' net worth computation as a basis for the determination of the deficiencies in petitioner's income tax for the respective years here involved. Revenue Agent Vitkus, in determining petitioner's net worth for the beginning period, December 31, 1946, determined that petitioner's cash on hand was $300. Actually petitioner had cash on hand of $5,500 at that time. This cash consisted of the three $1,000 bills above referred to and the six bags of coins in which were contained $2,500. This $5,500 was deposited by petitioner in 1948 for the purpose of meeting obligations incurred in changing the location of his restaurant heretofore referred to in these findings and was expended in 1948. The additional amount of cash on hand at December 31, 1946 was not expended in 1947, therefore, *34 that amount should also be added to the cash on hand at December 31, 1947. It was expended in 1948 and the cash on hand at December 31, 1948 in the amount $300of as shown by the respondent's net worth statement is correct. Petitioner's books and records were not adequate in any of the taxable years to clearly reflect his income. As a matter of fact, petitioner produced no books and records of his restaurant business at the hearing. The manner of the Commissioner's net worth computation was disclosed by Joint Exhibit 1-A which was attached to the deficiency notice as Exhibit A. This exhibit reads as follows: Net Worth and Living Expenses
12-31-46
12-31-47
12-31-48
12-31-49
12-31-50
12-31-51
Cash on hand
$ 300.00
$ 3,300.00
$ 300.00
$ 200.00
$ 200.00
$ 200.00
Cash in bank
277.08
400.00
542.64
610.20
652.75
789.36
U.S. Series G. Bonds
3,000.00
3,000.00
Missouri Pacific Bonds
1,400.00
840.00
Minn. & St. L.R.R. Stock
1,121.00
1,121.00
1,121.00
1,121.00
1,121.00
Automobile
1,500.00
1,500.00
1,500.00
3,516.00
3,516.00
5,821.80
Restaurant and Equipment
3,310.00
3,310.00
23,492.36
31,031.36
31,031.36
31,331.36
$10,908.08
$13,471.00
$26,956.00
$36,478.56
$36,521.11
$38,142.52
Cond. Sales - R. W. Hample
6,782.36
Loan - First Nat. Bank
743.60
Mortgage - Mech. Sav. Bank
7,000.50
6,001.50
5,002.50
Mortgage - G.M.A.C.
1,932.00
924.00
843.48
Note - Wheat's Store
325.00
Reserve for Depreciation
3,310.00
3,310.00
652.93
1,809.34
3,204.64
4,614.94
$ 3,310.00
$ 3,310.00
$ 8,178.89
$11,066.84
$10,130.14
$10,460.92
Ntw Worth
$ 7,598.08
$10,161.00
$18,777.11
$25,411.72
$26,390.97
$27,681.60
Net Worth at end of prior year
7,598.08
10,161.00
18,777.11
25,411.72
26,390.97
Increase in net worth
$ 2,562.92
$ 8,616.11
$ 6,634.61
$ 979.25
$ 1,290.63
Add Cost of Living
1,500.00
1,500.00
1,500.00
1,500.00
1,500.00
$ 4,062.92
$10,116.11
$ 8,134.61
$ 2,479.25
$ 2,790.63
Capital Gain Adjustment - 50%
1,232.73
1,944.60
87.00
Corrected Income
$ 2,830.19
$ 8,171.51
$ 8,134.61
$ 2,479.25
$ 2,703.63
Adjusted Gross Income Reported
186.38
1,703.51
(1,573.92)
(2,890.88)
1,758.36
Increase to Adjusted Gross Income
$ 2,643.81
$ 6,468.00
$ 9,708.53
$ 5,370.13
$ 945.27
*35 Opinion BLACK, Judge: Respondent's use of the net worth method plus nondeductible expenditures was clearly justified, although petitioner contends that we should accept the returns which he filed as correct, except as to one omission. Petitioner has asked us to make an ultimate finding of fact as follows: "Petitioner's income was correctly reported for the years under review aside from the failure of petitioner to report the sale of Missouri-Pacific bonds." Manifestly, in view of the record of evidence before us we could make no such finding of fact. It is true that petitioner introduced in evidence his income tax returns for the respective taxable years but these, of course, are not self proving. Petitioner's return for 1947 reported no taxable income; for 1948 he reported net income of $1,703.51; for 1949 he reported net loss of $1,573.92; for 1950 he reported net loss of $2,890.88; and for 1951 he reported net income of $1,758.36. No books or records were introduced in evidence to substantiate the income reported on the returns. If petitioner had any books or records which showed the income from his restaurant business in any of the taxable years he wholly failed to produce *36 them at the hearing. Manifestly, in this kind of situation, the Commissioner was entirely justified in rejecting the returns, which had been filed by petitioner, as being unsubstantiated and using the net worth method. As a matter of fact, practically all the evidence that was received at the hearing concerned one item which the respondent used in his net worth computation. That item was as to the amount of cash which petitioner had on hand at the beginning of the net worth computation, December 31, 1946. The Commissioner has used $300 as representing the cash which petitioner had on hand December 31, 1946, the beginning of the net worth period. Petitioner contends that he had on hand at least $17,000 in cash which he had saved over the years and that respondent should have used $17,000 as representing cash which petitioner had on hand December 31, 1946, instead of $300 that he did use. Petitioner testified that by frugal living and the fact that he was unmarried and had no dependents he had saved approximately $19,000 which he had in cash on December 31, 1946, and this had not been invested in any kind of securities or other property. Although petitioner testified that he had *37 on hand about $19,000 he contends in his brief that we should find he had at least $17,000. He concedes that he had other investments on hand at that time, including his small restaurant and equipment, which he owned and operated. In fact, we do not understand that petitioner disputes any of the items of property which the Commissioner included in his net worth statement as of December 31, 1946, except the $300 cash on hand. Although petitioner testified to the fact that he had $19,000 cash on hand December 31, 1946, we are not convinced that this is true. A careful examination and study of the entire record does not disclose any substantial corroboration that petitioner had this much money on hand on December 31, 1946. In fact, our study of the record leads us to believe that it is very unlikely that petitioner had any such amount of cash on hand at that time. The evidence does convince us, however, that petitioner did have on hand on December 31, 1946, at least as much as $5,500 in cash. Our conclusion that petitioner had on hand at December 31, 1946, at least $5,500 in cash is based upon the following facts which we consider established by the record: Responsible citizens of Waverly, *38 where petitioner lived, including the Mayor of the city and one of the principal police officers, testified that petitioner was a very industrious and frugal individual and was sober and temperate in his habits. The evidence also proves to our satisfaction that in 1945 petitioner requested the bank in Elmira to get him three $1,000 bills and the bank complied with his request and soon thereafter delivered these three $1,000 bills to him in exchange for other currency of smaller denominations which petitioner had accumulated. Petitioner testified that he took these three $1,000 bills and placed them in a money belt which he wore concealed around his waist. He also testified that at times this belt with the currency in it was kept in petitioner's safe but generally he wore it on his body. Petitioner's brother, William, testified in corroboration of this story and at the hearing petitioner introduced the money belt in evidence as an exhibit in the case. Also, William testified that in June 1948 petitioner delivered these three $1,000 bills to him to carry to the Citizens National Bank in Waverly for deposit to petitioner's account. Irene Doane, a teller at the Citizens National Bank of *39 Waverly testified at the hearing and in the course of her testimony the following questions and answers occur: "Q. * * * Calling your attention to June 14, 1948, are you able to tell the court anything about a deposit made on that date by Peter Cretecos? A. I remember a deposit was made in the amount of $3,000. I do remember specifically that at least two of those were thousand dollar bills, and possibly a third was, I don't remember for sure. * * *
Q. You recall definitely the two $1,000 bills? A. Yes. Q. Now that was deposited to the account of Peter Cretecos? A. Yes, it was. Q. Are you able to state now, thinking back to 1948, whether the deposit was made by Bill, who sits on your right, or Peter? A. I couldn't be absolutely sure. I don't remember for sure. Q. But you do know it was credited to Peter's account? A. That is right. Q. Now what recalls this to you, actually? A. Well, it was a little bit unusual to get bills of that denomination in a town the size of Waverly, and I remember being a little skeptical as to whether they were all right. I think I showed them to Mr. Boise who was assistant cashier to see if he thought they were okay." So it *40 seems to us that petitioner's testimony that in 1945 he acquired three $1,000 bills and kept them until they were deposited to the credit of his account on June 14, 1948, in the Citizens National Bank of Waverly, is well corroborated by credible testimony. We have, therefore, found in our Findings of Fact that petitioner had in his possession this $3,000 in currency December 31, 1946. The next items which we think have been well corroborated by the evidence is that petitioner had in his safe in his restaurant in Waverly on December 31, 1946, six bags of coins which contained $2,500. Petitioner testified that from time to time he accumulated coins in bags and kept them in his safe in his restaurant, also that he kept considerable amounts of currency in his safe. His brother, William, testified that he saw these sacks of coins in petitioner's safe in 1945 but did not count the money which was in them. William testified that in June 1948, he carried these sacks of coins, six of them in all, to the Citizens National Bank in Waverly and deposited the money to the credit of petitioner's account and that the amount of coins thus deposited aggregated $2,500. A deposit slip was introduced *41 in evidence as petitioner's Exhibit No. 13 which shows there was deposited on June 8, 1948, in the Citizens National Bank of Waverly, New York, to the credit of the account of Peter Cretecos, $2,500 in coins. With reference to this deposit the following questions and answers occur in the testimony of Peter Cretecos, the petitioner: "Q. I am going to show you Exhibit 13 for identification, and that purports to be a deposit slip in the name of Peter Cretecos dated June 8, 1948. A. 1948. Q. And it says opposite Coins "$2500." A. Twenty-five hundred dollars. Q. Is that the deposit of the coins? A. Yes. Q. Are those the same coins you had in the safe? A. Same coins I had in the bags. Q. In 1945? A. Yes." We think the claim of petitioner that he had on hand $2,500 in coins in his safe on December 31, 1946, is well corroborated by the evidence and we have, therefore, made a finding of fact that petitioner had this $2,500 in coins in his safe December 31, 1946. Therefore, the result of our findings on this question of cash on hand December 31, 1946, is that petitioner had on hand $5,500 in cash instead of the $300 which the Commissioner had determined and that this *42 additional amount was expended in 1948 in connection with changing the location of his restaurant. In a recomputation under Rule 50 effect should be given to these findings as to petitioner's cash on hand at the opening date of the net worth computation; and petitioner's adjusted gross income reflected in the net worth computation should be changed accordingly. In his determination of the deficiencies the Commissioner has imposed additions to tax for negligence under section 293(a), additions to tax for failure to file declaration of estimated tax under section 294(d)(1)(A), and additions to tax for substantial underestimation of estimated tax under section 294(d)(2). The petitioner has offered no evidence with respect to the imposition of these additions to the tax nor does he argue them in his brief. The Commissioner is, therefore, affirmed as to these impositions of additions to the tax for lack of evidence to overcome the presumptive correctness of his determination. However, the amounts of these additions to tax will be recomputed under Rule 50 along with a recomputation of the deficiencies under Rule 50 as heretofore directed. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1939, as amended.↩